**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MELISSA BLEVINS,** individually and on behalf of all others similarly situated, | : | |
| **Plaintiff,** | : | **CASE NO. 2:25-cv-1413** |
| v. | : | **Judge Algenon L. Marbley** |
| **ATRIUM CENTERS MANAGEMENT LLC d/b/a ATRIUM CENTERS, INC.,** | : | **Magistrate Judge Chelsey M. Vascura** |
| **Defendant.** | : | |

**<u>OPINION & ORDER</u>**

This matter is before this Court on Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 22). For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND

### A. Factual Background

This case arises out of a ransomware attack on the computer network of Defendant Atrium Centers Management, LLC d/b/a Atrium Centers, Inc. ("Atrium"). Atrium is a skilled nursing provider that offers short-term, post-acute rehabilitation and long-term nursing care at facilities in Ohio, Kentucky, Wisconsin, and Michigan. (ECF No. 10 ¶¶ 27–28). Atrium is organized under Ohio law and maintains its principal place of business in Columbus, Ohio. (*Id.* ¶ 23).

Atrium requires its patients and employees to provide sensitive personal information. (*Id.* ¶ 30). That information includes names, address information, Social Security numbers, driver's

license numbers, insurance information, medical information, and banking or credit card information. (*Id.* ¶ 30).

Plaintiff Melissa Blevins is an Ohio resident and an Atrium employee. (*Id.* ¶ 22). As a condition of her employment, she provided Atrium her full name, date of birth, Social Security number, insurance information, protected health information, financial account information, driver's license, and home address. (*Id.* ¶¶ 30, 113).

Between October 8 and October 12, 2025, an unauthorized actor accessed Atrium's network. (*Id.* ¶¶ 4–5). Atrium identified unusual activity on its systems on or about October 13, 2025. (*Id.* ¶ 6). Its investigation found that files and folders on the network had been viewed or copied without authorization. (*Id.* ¶ 5). According to Plaintiff, the compromised information belonged to current and former patients and employees and included names, contact, and demographic information, Social Security and driver's license numbers, medical and health insurance information, and dates of birth. (*Id.* ¶ 7).

Atrium posted a general notice of the incident on its website on November 9, 2025. (*Id.* ¶ 6). When Plaintiff filed the First Amended Complaint, Atrium had not yet sent individual notice to affected patients or employees. (*Id.* ¶¶ 6, 39). Plaintiff alleges that Atrium has not offered affected individuals credit monitoring. (*Id.* ¶ 122).

According to cybersecurity news sources, Medusa claimed responsibility for the attack and leaked stolen files as proof. (*Id.* ¶ 41). Plaintiff alleges that patient and employee information from the incident has since been posted on the dark web. (*Id.* ¶ 40).

Plaintiff alleges that she learned of the incident through her own research, after discovering that information she had provided to Atrium, including her email address and Social Security number, had been found on the dark web as result of the breach. (*Id.* ¶ 114). Since that breach, she

alleges she has received an excessive number of spam calls and emails at the same cell phone number and email address she gave Atrium. (*Id.* ¶ 117). She has replaced her banking cards and regularly monitors her financial accounts for irregular activity, an effort that she alleges has taken several hours and causes her great anxiety. (*Id.* ¶¶ 116, 118).

**B. Procedural Background**

Shannon Shawanokasic, a Wisconsin resident, filed this putative class action on December 2, 2025. (ECF No. 1). After counsel confirmed that Ms. Shawanokasic's information was not affected by the incident, Plaintiff Blevins was added through the First Amended Class Action Complaint, and Ms. Shawanokasic was dismissed. (ECF No. 10; *see* ECF Nos. 11–12). The parties then jointly sought two stays so that Defendant could investigate whether Plaintiff's information was exposed, and this Court granted both. (ECF Nos. 13, 18).

The First Amended Complaint asserts six claims on behalf of Plaintiff and a putative class of "[a]ll persons whose Private Information was compromised as a result of the Data Breach": "(i) negligence, (ii) negligence per se, (iii) breach of implied contract, (iv) breach of fiduciary duty, (v) unjust enrichment, and (vi) declaratory relief." (ECF No. 10 ¶¶ 19, 138). Plaintiff seeks damages, restitution, and injunctive relief. (*Id.* ¶ 20). The injunctive relief she seeks includes improvements to Atrium's data security, annual audits, and no fewer than ten years of credit monitoring paid for by Defendant. (*Id.* ¶¶ 20, 163, 184, 217; *id.* at 47).

Defendant moved to dismiss the First Amended Complaint in its entirety. (ECF No. 22). Plaintiff opposed the Motion and conceded her negligence per se claim. (ECF No. 24 at 18 n.12). Defendant replied. (ECF No. 25). The Motion is ripe for review.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Standing is a threshold jurisdictional issue, so this Court addresses it first.

When a defendant challenges subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 629 (S.D. Ohio 2020) (Marbley, C.J.) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). A Rule 12(b)(1) motion takes one of two forms: a facial attack or a factual attack. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack tests only the sufficiency of the pleading. *Id.* In reviewing one, the court accepts the complaint's allegations as true, as it would under Rule 12(b)(6). *Id.* A factual attack, by contrast, disputes the facts on which jurisdiction depends, so this Court weighs the evidence without presuming the allegations to be true. *Id.* (citing *Ohio Nat'l*, 922 at 325).

Defendant's challenge rests entirely on the allegations in the First Amended Complaint, and is a facial attack, as Defendant explains: the "First Amended Complaint is facially deficient." (ECF No. 25 at 1). It is therefore a facial attack.

### B. 12(b)(6)

A motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on the motion, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor the plaintiff." *In re Travel Agent Comm'n*

*Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted). To survive, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotation marks omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And although the court "must accept all well-pleaded factual allegations in the complaint as true," it "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

In assessing a Rule 12(b)(6) motion to dismiss, this Court focuses on the allegations in the complaint, but it also considers "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. LAW & ANALYSIS

This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). CAFA grants district courts "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). The putative class must also number at least 100. *Id.* § 1332(d)(5)(B). For CAFA purposes, an unincorporated association is a citizen of the State under whose laws it is organized and the State where it has its principal place of business. *Id.* §

1332(d)(10). Atrium, which is organized under Ohio law and headquartered in Columbus, is therefore a citizen of Ohio. (ECF No. 10 ¶ 23). Although Plaintiff is also an Ohio citizen, she seeks to represent a class of "[a]ll persons whose Private Information was compromised as a result of the Data Breach," which includes current and former patients and employees of Atrium facilities in Kentucky, Wisconsin, and Michigan. (*Id.* ¶¶ 28, 138). Diversity is therefore satisfied. The class is alleged to number in the thousands, and the aggregate amount in controversy is alleged to exceed $5,000,000. (*Id.* ¶¶ 24, 138, 141). Venue is proper because Atrium resides in this District. 28 U.S.C. § 1391(b)(1), (c)(2). This Court therefore addresses Defendant's Rule 12(b)(1) challenge first, and then the sufficiency of Plaintiff's claims under Rule 12(b)(6).

**A. Plaintiff Has Article III Standing to Pursue Damages and Credit-Monitoring Relief**

Article III, § 2 of the Constitution limits a federal court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. A plaintiff's standing to sue is one element of this constitutional requirement. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422–23 (2021). To have standing, a plaintiff must show that: (1) she suffered a concrete, particularized, and actual or imminent injury; (2) the injury is traceable to the defendant's conduct; and (3) a favorable ruling would redress that injury. *Id.* at 423. Atrium here challenges Plaintiffs' standing on the first two elements: injury and traceability. (ECF Nos. 22 at 4–7; 25 at 1–5).

Injury is the first and foremost of standing's three elements. *Foster*, 493 F. Supp. 3d at 631. A plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). The Sixth Circuit recognizes three ways to make that showing: (1) by demonstrating an actual injury; (2) by demonstrating that the Defendant violated a statute and thereby concretely harmed the Plaintiff; or (3) by demonstrating an imminent risk of

injury. Id. (citing *Huff v. TeleCheck Services, Inc.*, 923 F.3d 458, 464 (6th Cir. 2019)). Since *Foster*, the Supreme Court has clarified that a risk of future harm, standing alone, cannot support a claim for damages; the plaintiff must show that the risk materialized or that she was separately harmed by her exposure to it. *TransUnion*, 594 U.S. at 436–37.

Plaintiff presses several theories of injury, but this Court need address only one. (*See* ECF No. 24 at 8–14). Since the breach, Plaintiff has received an excessive number of spam calls and emails at the same phone number and email address she provided Atrium. (ECF No. 10 ¶ 117). In a data-breach case, another judge of this Court held that "unsolicited calls and messages constitute cognizable Article III injuries in fact," if only by a thin margin. *Tate v. EyeMed Vision Care, LLC*, 2023 WL 6383467, at *5 (S.D. Ohio Sept. 29, 2023) (citing *Dickson v. Direct Energy, LP*, 69 F.4th 338, 345 (6th Cir. 2023)); accord *In re Bon Secours Mercy Health Data Breach Litig.*, 2025 WL 1827804, at *5 (S.D. Ohio July 2, 2025).[1]

Defendant's contrary arguments do not persuade. Defendant first contends that *Dickson* arose under the Telephone Consumer Protection Act and concerned the defendant's own calls. (ECF No. 25 at 4). *Dickson's* concreteness holding rests on the nature of the harm, not the identity of the caller; who is responsible for the calls is a question of traceability. *See Dickson* 69 F.4th at 346. Defendant next reads *Tate* as turning on a notification that the plaintiff's contact information appeared on the dark web. (ECF No. 25 at 4). Plaintiff alleges that very fact: her email address and Social Security number were found on the dark web as a result of the breach. (ECF No. 10 ¶ 114). That she learned of the exposure through her own research rather than a notification goes to proof, not plausibility. At this stage, general factual allegations are presumed to embrace the specific facts needed to support them. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

---

[1] Because the spam injury suffices, this Court does not reach Plaintiff's remaining theories of injury, several of which Defendant contends *Tate* rejected. (ECF No. 25 at 3–4).

Next, causation. Traceability requires a causal connection that is more than speculative but less than but-for causation. *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 714 (6th Cir. 2015). Plaintiff gave Atrium her contact information and Social Security number, and Atrium confirms that files on its network were viewed or copied without authorization. (ECF No. 10 ¶¶ 5, 7, 113). Medusa then claimed responsibility for the attack, Plaintiff's Social Security number and email address appeared on the dark web, and spam began arriving at the very channels she had given Atrium. (*Id.* ¶¶ 41, 114, 117). Taken together, those allegations make it more than a sheer possibility that Plaintiff's injury is traceable to the breach. *See Galaria v. Nationwide Mut. Ins. Co.,* 663 F. App'x. 384, 388 (6th Cir. 2016).

Defendant responds that Plaintiff sued before receiving individualized notice, that many other entities hold her contact information, and that data breaches are commonplace. (ECF No. 22 at 6–7; 25 at 1–3). None of these arguments defeats traceability at the pleading stage. Plaintiff alleges that Atrium has sent individualized notice to no one. (ECF No. 10 ¶ 39). A defendant cannot control a plaintiff's standing by withholding notice. Nor must Plaintiff rule out every alternative explanation. She need only plausibly allege that the breach caused her injury. *Tate*, 2023 WL 6383467, at *6. She has done so, and Defendant remains free to test the connection on a developed record.

Redressability remains, and Plaintiff satisfies it. Her injuries sound in tort and contract, and money damages would redress them. Plaintiff therefore has standing to pursue damages.

### B. Plaintiff Has Standing to Seek Credit Monitoring, But Not Other Declaratory or Injunctive Relief

Standing is not dispensed in gross, so Plaintiff must separately show standing for each form of relief she seeks. *TransUnion*, 594 U.S. at 431. She seeks three forms of prospective relief: declarations that Atrium owes and continues to breach a duty to secure her information; an

injunction requiring adequate security protocols and annual audits; and Defendant-funded credit monitoring. (ECF No. 10 ¶¶ 163, 184, 216–217; *id.* at 47). She has standing to seek only the last.

The security-related relief fails because "forward-looking preventative remedies will do nothing to redress" the "already-occurred injury" of unauthorized access to Plaintiff's information. *Bowles v. Whitmer*, 120 F.4th 1304, 1311 (6th Cir. 2024). Such relief cannot protect Plaintiff from misuse of her information by those who now possess it; it guards only against a future breach. *Bon Secours*, 2025 WL 1827804, at *5 (citing *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023)). Plaintiff alleges that the risk of another breach is "real, immediate, and substantial." (ECF No. 10 ¶ 218). That allegation is conclusory, and nothing in the First Amended Complaint suggests that Atrium faces a greater risk of another attack than any other holder of private data. See *Webb*, 72 F.4th at 378.

The requested declarations fail for the same reason. A declaratory judgment is issued only when it is substantially likely to redress an actual or imminent injury. *Mikel v. Quin*, 58 F.4th 252, 259 (6th Cir. 2023). A declaration about Atrium's duties would not redress the risk posed by data already taken. *Tucker*, which allowed a declaratory judgment claim to proceed after a data breach, does not hold otherwise; it applied the discretionary factors governing declaratory actions without addressing Article III standing, and it predates *Bowles*. *Tucker v. Marietta Area Health Care, Inc.*, 2023 WL 423504, at *7 (S.D. Ohio Jan. 26, 2023). Plaintiff's only authority, *Crowe v. Managed Care of N. Am., Inc.*, 2025 WL 2829532, at *5 (S.D. Fla. Jan. 21, 2025), is an out-of-circuit decision that does not cure the absence of any factual allegation that another breach at Atrium is imminent. (*See* ECF No. 24 at 22). Count VI is therefore **DISMISSED WITHOUT PREJUDICE**.

Credit monitoring is different. Forward-looking relief can rest on a substantial risk of future harm. *TransUnion*, 594 U.S. at 435; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). Plaintiff's information was allegedly taken in a targeted ransomware attack claimed by Medusa, and her Social Security number has already surfaced on the dark web. (ECF No. 10 ¶¶ 41, 114). There is no need for speculation where "Plaintiffs allege that their data has already been stolen and is now in the hands of ill-intentioned criminals." *Galaria*, 663 F. App'x at 388. Atrium has offered no credit monitoring. (ECF No. 10 ¶ 122). Unlike improved security, monitoring addresses the risk flowing from the breach that already occurred. Therefore, Plaintiff has standing to seek it.[2]

### C. Plaintiff Plausibly Alleges Breach of Implied Contract, But Not Her Remaining Claims

Because Plaintiff has standing to pursue damages, this Court turns to the sufficiency of her claims. Ohio law governs. A federal court exercising diversity jurisdiction applies the forum State's choice-of-law rules, and where neither party argues that another State's law applies, the court applies the forum's substantive law. *Klaxon Co v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–497 (1941); *Spinnaker Ins. Co. v. Heart of Gold Title, LLC*, 2026 WL 710135, at *4 (S.D. Ohio Mar. 13, 2026) (Marbley, J.). Both parties apply Ohio law, and Plaintiff and Atrium are both Ohio citizens. (ECF Nos. 22 at 8; 24 at 14).

#### *1. Negligence and Negligence Per Se*

A negligence claim requires a duty, a breach of that duty, and that the breach proximately caused a resulting injury. *Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745, ¶ 10 (Ohio). Plaintiff plausibly alleges the first two elements but not the third.

[2] Whether credit monitoring is an appropriate remedy on Plaintiff's surviving claim is a question for a later stage of this litigation.

Defendant does not meaningfully contest duty. (*See* ECF No. 22 at 9). Although Ohio generally imposes no duty to act affirmatively for the protection of others, certain special relationships, including employer and employee, give rise to a duty to protect. *Jackson v. Forest City Enters.*, Inc., 675 N.E.2d 1356, 1358 (Ohio Ct. App. 1996) (citing Restatement (Second) of Torts § 314 (Am. L. Inst. 1965)). Relying on that principle, another judge of this Court found that an employer plausibly owed a duty to protect the personal information it required its employees to provide. *Bon Secours*, 2025 WL 1827804, at *9. Plaintiff alleges the same relationship: Atrium required her sensitive information as a condition of her employment. (ECF No. 10 ¶¶ 30, 113, 151). That suffices to allege a duty.

Plaintiff alleges that Atrium breached that duty by failing to encrypt her information, to monitor its network for intrusions, and to train its workforce, and that attackers had five days of undetected access to the network as a result. (ECF No. 10 ¶¶ 4–5, 85, 158). Defendant does not challenge these allegations, which plausibly allege a breach.

Plaintiff's claim fails at injury. Defendant argues that Ohio's economic-loss rule bars recovery. (ECF No. 22 at 10–11; 25 at 5–6). Plaintiff responds that her privacy, time, and anxiety injuries are noneconomic, and that Atrium's duty arises independently of contract. (ECF No. 24 at 17–18). A plaintiff who has suffered only economic loss from another's negligence has not been injured in a manner that is legally cognizable or compensable in tort; such losses are recoverable only in contract. *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 2005-Ohio-5409, ¶ 6 (Ohio); *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 653 N.E.2d 661, 667 (Ohio 1995); *see Foster*, 493 F. Supp. 3d at 638 (applying the rule in a data-breach case).

Plaintiff's lost time and card-replacement costs are economic losses. Indeed, the authority on which she relies treats "the loss of this time [as] equivalent to a monetary injury." *Webb*, 72

F.4th at 376; (*See* ECF No. 24 at 10). Her anxiety fares no better. In *Foster*, this Court explained that although the economic-loss rule does not itself bar a claim for emotional distress, such a claim is in substance one for negligent infliction for emotional distress, which Ohio does not permit absent an allegation that the plaintiff feared or saw some quantifiable physical loss. 493 F. Supp. 3d at 638 (citing *Lawyers Coop. Publ'g. Co. v. Muething*, 603 N.E.2d 969, 972–73, 75 (Ohio 1992)). Plaintiff's anxiety stems from a fear of identity theft, not of physical loss. (ECF No. 10 ¶ 116). Her privacy theory fails for a similar reason. Ohio treats mental suffering from a privacy intrusion as compensable through negligent invasion of privacy, which Plaintiff does not plead, and courts in this District have declined to extend that tort's measure of injury to ordinary negligence claims. *See Tucker*, 2023 WL 423504, at *4.

Nor does Plaintiff avoid the rule by invoking a duty that arises independently of contract (ECF No. 24 at 18). Under *Foster*, a plaintiff can pursue a tort claim alongside a contract claim only if the defendant breached a duty owed separately from the contract and the plaintiff alleges damages beyond those attributable to the contract breach. 493 F. Supp. 3d at 639 (citing *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp. 2d 834, 839 (S.D. Ohio 2013)). Even assuming that Atrium's duty arises from the employment relationship rather than from contract, Plaintiff's negligence and implied contract claims rest on the same alleged failure to safeguard her information and seek the same damages. (*Compare* ECF No. 10 ¶¶ 158, 161, with *id.* ¶¶ 181–83). As in *Foster*, the negligence claim is therefore barred.[3]

This Court recognizes that another judge of this Court has declined to apply the rule to a negligence claim premised on a common-law duty, and other courts have done the same. *Bon*

[3] Defendant first argues in its reply that Plaintiff's negligence claim cannot proceed alongside her implied contract claim because both rest on the same conduct and seek the same damages. (ECF No. 25 at 6). This Court nonetheless considers that argument because it follows from this Court's own precedent in *Foster* and from the economic-loss argument in Defendant's Motion. (*See* ECF No. 22 at 10–11).

*Secours*, 2025 WL 1827804, at *9; *Allen v. Wenco Mgmt.*, LLC, 696 F. Supp. 3d 432, 439 (N.D. Ohio 2023). *Bon Secours* did not address the second requirement under *Foster*: whether the tort damages exceed those recoverable in contract. Absent guidance from the Supreme Court of Ohio, this Court adheres to *Foster*. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (explaining that a federal court applying state law should choose the narrower of competing interpretations when one would reasonably restrict liability and the other would greatly expand it).

Plaintiff's standing does not change this result. Whether an injury is concrete under Article III is a separate question from whether Ohio tort law compensates it, and Plaintiff's economic losses remain recoverable, if at all, in contract. Because Plaintiff alleges no cognizable injury, this Court does not reach Defendant's proximate-cause argument. Defendant's Motion is **GRANTED** as to Count I. Plaintiff concedes her negligence per se claim. (ECF No. 24 at 18 n. 12). The Motion is therefore **GRANTED** as to Count II.

*2. Breach of Implied Contract*

Under Ohio law, express and implied contracts share the same elements: offer, acceptance, consideration, and a meeting of the minds. *Deffren v. Johnson*, 2021-Ohio-817, ¶ 19 (Ohio Ct. App. 1st Dist.). They differ only in how those elements are proven. *Reali, Giampetro & Scott v. Soc'y Nat'l Bank*, 729 N.E.2d 1259, 1263 (Ohio Ct. App. 1999). For an implied contract, where "no express agreement exists," the meeting of the minds is shown by the surrounding circumstances and tacit understanding. *Id.*

Plaintiff alleges that Atrium required her, as a condition of employment, to provide her Social Security number, financial account information, and other sensitive information. (ECF No. 10 ¶¶ 30, 113). She further alleges that she did so with the mutual understanding that Atrium would

keep that information secure. (*Id.* ¶¶ 46, 178).[4] That suffices. On nearly identical facts, another judge of this Court explained that, in an age of data and identity theft, the mandatory receipt of Social Security numbers implies the recipient's assent to protect them. *Bon Secours*, 2025 WL 1827804, at *11 (quoting *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016)). This Court reached the same conclusion in *Foster*, where a patient alleged that he was required to provide his personal information in exchange for treatment, and that the healthcare provider represented it would keep that information secure. *Foster*, 493 F. Supp. 3d at 640–641.

Defendant's arguments do not change the result. Defendant emphasizes that the Privacy Policy is directed at patients, not employees. (ECF No. 22 at 14; 25 at 6). Defendant is correct, but that retort is beside the point. This Court does not rely on the Privacy Policy to find an implied contract. Plaintiff's claim rests instead on the circumstances of her employment: Atrium required her to provide her Social Security number and other sensitive information as a condition of working there, and that requirement supports an inference that Atrium agreed to protect it. *See Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 780 (S.D. Ohio 2024) (declining to resolve a dispute over a privacy policy because the plaintiffs stated an implied contract claim without it). For the same reason, *Tucker* does not control; there, the claims rested on a HIPAA privacy notice that promised nothing about third-party intrusions. 2023 WL 423504, at *5–6. Defendant also contends that Plaintiff identifies no employment-based promise. (ECF No. 25 at 6–7). An implied contract requires none, because assent is inferred from the parties' conduct. *Legros v. Tarr*, 540 N.E.2d 257, 263 (Ohio 1989). Finally, Plaintiff pleads damages. She alleges economic losses flowing from

[4] Count III is drafted largely in terms of patients who provided information to obtain medical services. (ECF No. 10 ¶¶ 174, 177). It incorporates the preceding allegations, including those describing Plaintiff's employment. (*Id.* ¶ 173). This Court reads the First Amended Complaint as a whole.

the breach, including the cost of replacing her bank cards and the time spent monitoring her accounts. (ECF No. 10 ¶¶ 116, 118). If she proves the breach but not actual damages, Ohio law permits an award of nominal damages. *Decastro v. Wellston City Sch. Dist. Bd. Of Educ.*, 761 N.E.2d 612, 615 (Ohio 2002). Defendant's Motion is **DENIED** as to Count III.

*3. Breach of Fiduciary Duty*

A fiduciary relationship arises when special confidence and trust is placed in another, who acquires a resulting position of superiority or influence. *Stone v. Davis*, 419 N.E.2d 1094, 1097–98 (Ohio 1981). Plaintiff relies on *Tucker*. (ECF No. 24 at 19–20). *Tucker* recognized a healthcare provider's fiduciary duty to keep its patients' medical information confidential. *Tucker*, 2023 WL 423504, at *6; *see Biddle v. Warren Gen. Hosp.*, 715 N.E.2d 518, 523 (Ohio 1999). Plaintiff, however, was Atrium's employee, not its patient. (ECF No. 10 ¶¶ 22, 113). Holding an employee's insurance or health information does not make an employer the employee's physician. Plaintiff identifies no Ohio authority imposing fiduciary duties on an employer for collecting employee information. *Cf. Brooks*, 732 F. Supp. 3d at 780–81 (finding no fiduciary relationship where a bank held its customers' sensitive information). Defendant's Motion is **GRANTED** as to Count IV.

*4. Unjust Enrichment*

To state a claim for unjust enrichment, a plaintiff must allege: (1) a benefit conferred on the defendant; (2) the defendant's knowledge of the benefit; and (3) retention of the benefit under circumstances where it would be unjust to keep it without payment. *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984). Plaintiff identifies two benefits: her labor and her information. (ECF No. 24 at 20–22). Neither works.

Plaintiff exchanged her labor under the terms of her employment. Her complaint that Atrium kept the value of that labor without spending enough on security is a claim that Atrium

failed to provide what the employment relationship promised. She is pressing the claim in Count III. There is, in short, no unaccounted-for benefit. *Bon Secours*, 2025 WL 1827804, at *12.

Her information fares no better. Personal information does not itself confer a benefit on the party that collects it. *Id.* Plaintiff's allegations about federal electronic-health-record incentives concern patients' medical information, not employees' data. (ECF No. 10 ¶¶ 200–01). Her authorities do not suggest otherwise. *Permenter* addressed false-certification allegations under federal law, and *Viviali* applied Kentucky law. *United States ex rel. Permenter v. eClinicalworks, LLC*, 2025 WL 1762264, at *4 (M.D. Ga. June 25, 2025); *Viviali v. One Point HR Sols.*, 2025 WL 1158740, at *9 (E.D. Ky. Apr. 21, 2025). *Foster* and *Tucker* are distinguishable because the patients there alleged they paid for treatment that included the security of their information. *Foster*, 493 F. Supp. 3d at 641; *Tucker*, 2023 WL 423504, at *7. Defendant's Motion is **GRANTED** as to Count V.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint (ECF No. 22) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is resolved as follows: The Motion is **DENIED** under Rule 12(b)(1) as to Plaintiff's claims for damages and her request for credit-monitoring relief and **DENIED** under Rule 12(b)(6) as to Plaintiff's claim for breach of implied contract (Count III). Plaintiff's claim for declaratory and injunctive relief (Count IV) is **DISMISSED WITHOUT PREJUDICE** for lack of standing. Plaintiff's claim for negligence per se (Count II) is **DISMISSED WITH PREJUDICE**. Plaintiff's

claims for negligence (Count I), breach of fiduciary duty (Count IV), and unjust enrichment (Count V) are **DISMISSED WITHOUT PREJUDICE**. This case will proceed on Count III.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: November 2, 2026**